**Frank KOLENKIEWICZ, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (SKF USA, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1999.

Decided May 27, 1999.

Debra A. Jensen and Kelly F. Melcher, Philadelphia, for petitioner.

Michael J. McCadden, Philadelphia, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

FLAHERTY, Judge.

Frank Kolenkiewicz (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of the Workers' Compensation Judge (WCJ) which granted SKF USA, Inc.'s (Employer's) modification petition. We affirm.

The facts as found by the WCJ are as follows. Claimant sustained an injury on June 9, 1988 to his low back. Employer issued a Notice of Compensation Payable. The average weekly wage was $846.60 and the applicable compensation rate was $377.00 per week. Claimant returned to work following the injury in a modified capacity and benefits were adjusted pursuant to various supplemental agreements. On June 15, 1991, Claimant left work due to a plant closure and received total disability benefits until the WCJ's decision in this case.

Ms. Lukas, a registered rehabilitation service worker, located a part-time position for Claimant at a Photo Licensing Center in the nature of a sedentary clerical position entitled "Licensing Clerk." Employer's medical expert released Claimant to sedentary work and specifically approved the Licensing Clerk position.

On September 20, 1995, Ms. Lukas accompanied Claimant to the interview for the Licensing Clerk position. However, Claimant did not fully complete the application for the position. Claimant requested to have legal counsel review the application which required a release of information that permitted the prospective employer to perform a criminal background check and a drug test prior to a final offer of employment. On the day of the interview, Ms. Lukas twice faxed a copy of the application to the office of Claimant's counsel. Ms. Lukas also called Claimant's counsel to follow up on the faxes. Calls were placed on September 21, 25, and 27. Ms. Lukas also sent correspondence to Claimant's counsel on September 22, 1985. In the course of the proceedings before the WCJ, Claimant's counsel admitted that he did in fact receive the faxed application and release on September 20, 1995. The prospective employer was willing to hold the position open and meet with Claimant again during the week of September 25, 1995. Not until October 13, 1995 did Claimant's counsel call Ms. Lukas in response to her inquiries. However by that time, the position was filled. As a result, Claimant never signed the application and the follow up meeting did not take place.

The WCJ, relying upon the testimony of Employer's expert found that Claimant's physical condition had changed such that he could return to a sedentary position and that the Licensing Clerk position fit those restrictions. The WCJ concluded that Employer met its burden to prove job availability under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The WCJ then concluded that because Claimant failed to sign the application and release in a timely manner, after the prospective employer agreed to hold the position for one week, Claimant failed to carry his burden to prove that he followed up on the job referral in good faith. Accordingly, the WCJ granted Employer's modification petition. However, given Claimant's high pre-injury wage rate and the part time nature of the available job, Claimant's rate of compensation remained unchanged at $377.00 per week. Essentially the WCJ's grant of the modification petition started the running of the 500 week limit on wage benefits pursuant to Section 306(b) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512. The Board affirmed. This petition for review followed.

■ Appellate review over an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed or whether the WCJ's necessary findings of fact are supported by substantial evidence. *Serrano v. Workers' Compensation Appeal Board (Chain Bike Corp.)*, 718 A.2d 885 (Pa. Cmwlth.1998).

The first issue which claimant raises is: whether the Employer has met its burden of proving job availability when the job required the applicant to undergo drug testing and agree to a criminal record check and the Claimant was taking narcotic prescription drugs and had a criminal record?

In *Kachinski*, the Supreme Court definitively established what burdens were placed upon the parties litigating a modification or suspension petition based upon job availability. Those burdens are as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then procure evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* 516 Pa. at 252, 532 A.2d at 380.

Claimant argues that Employer did not satisfy its burden of proving that the Licensing Clerk position was available to him because it did not prove that Claimant's criminal record (vehicular homicide in 1969, Reproduced Record (R.R.) at 196a, 210a, Claimant's brief at 13) would not affect the availability of that job to him. Employer responds that it did sustain its burden of proof because "the application form itself in this case indicated that a prior conviction would not automatically preclude the individual from being hired (r.r. 179a) and so the claimant would still have to follow up on the job referral." Employer's brief at 9. The application provided that

I further understand that if I am selected as a finalist for any position with this Company, they will do an investigation of criminal and/or child abuse history. (NOTE: You will not be automatically excluded from consideration if you have been convicted of a crime. Your suitability for the position sought will be evaluated based upon the totality of circumstances, such as; the nature of the

crime, the recency of the conviction, and the type of work involved.)

R.R. at 179a. In addition, Ms. Lukas testified as follows upon cross-examination:

Q. Your understanding is the existence of a criminal record, in and of itself, would not necessarily exclude him from this job; correct?

A. No, it would not.

Q. But it might exclude him from the job; correct?

A. One of the other individuals that was hired and has continued to work for two years had a record check that came back with something on it. I was never told about that either. He's been working two years for them.

R.R. at 147a.

■ Assuming, arguendo, that the Employer had the burden to prove Claimant's conviction did not automatically bar Claimant from being considered for the job, we find that the language on the form and Ms. Lukas' testimony was sufficient evidence to establish that the job was available to Claimant within the meaning of *Kachinski.* Compare *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co),* 541 Pa. 148, 661 A.2d 1355 (1995) (in determining whether employer met its burden of proving job availability, employer need not show that the prospective job accommodated any of claimant's physical limitations which were unrelated to his work-injury); *Hunter v. Workmen's Compensation Appeal Board (Geriatric & Medical Center),* 667 A.2d 259 (Pa.Cmwlth. 1995)(same); *Sheehan v. Workmen's Compensation Appeal Board (Supermarkets General and Alexsis, Inc.),* 143 Pa. Cmwlth. 624, 600 A.2d 633 (1991), *allocatur denied,* 530 Pa. 663, 609 A.2d 170 (1992) (same); *Tunnelton Mining Co./Pennsylvania Mines Corp. v. Workmen's Compensation Appeal Board (Adams),* 144 Pa.Cmwlth. 316, 601 A.2d 483 (1991)(same) *with Miller v. Workmen's Compensation Appeal Board (Fischbach & Moore),* 160 Pa.Cmwlth. 589, 635 A.2d 709 (1993)(employer's burden of proving job availability included necessity of proving that claimant meets job requirement of possessing a license and automobile).

Claimant argues that this case is similar to *Miller.* In *Miller,* the employer sought to modify a claimant's benefits on the asserted availability of a job which met the claimant's physical restrictions but also required the claimant to have a car. The WCJ therein granted the modification and the Board affirmed. This court rejected the contention that the claimant's benefits should be modified based upon the availability of the job requiring a car on the grounds that claimant did not have a car and therefore employer did not meet its burden to prove that the job was available to claimant. Unlike in *Miller,* where having a car was an absolute requirement for the job and failure to do so barred one from being considered for the position, the mere fact that the prospective employer herein required a criminal background check and that Claimant had a conviction, did not automatically bar Claimant from being considered for the position. Thus, *Miller* does not require a reversal herein.

Next, Claimant argues that Employer failed to prove that the job was available to him because he uses prescription narcotic medication and the prospective employer requires a drug screening. Claimant asserts that the prospective employer would not hire him because the presence of his prescription narcotics would be detected and the application form states that if any narcotics are detected, he would not be hired and the form does not make an exception for prescription drugs. In response, Employer asserts that the Claimant "never testified that he had *any* concern with respect to the drug screening." Employer's brief at 10. Employer suggests that given this lack of testimony, this issue was never raised before the WCJ and thus is waived.

■ We agree with the Employer that an issue not raised before the WCJ is waived for purposes of appeal. *Rite Aid*

*Corp. v. Workers' Compensation Appeal Board (Bennett),* 709 A.2d 447 (Pa. Cmwlth.1998). However, even though Claimant may not have testified about the drug screening, he did present evidence of the prospective employer's drug screening by way of the application form which provided in relevant part that

> a finalist may be subjected to a drug test prior to being hired to assure the Company the applicant does not currently have narcotics, sedative, stimulants, and other controlled substances and/or mood-altering substances in their body. I understand if I have any such substance in my body at the time of the drug test, the company will not hire me.

R.R. at 179a. In addition, there was evidence that Claimant had a concern about the drug test which he apparently raised with Ms. Lukas at the time of applying for the Photo Licensing Clerk position. See R.R. at 137a (Ms. Lukas testified that Claimant's "other concerns involved his medication. He was concerned that his medications would not allow him to be tolerant."); See also R.R. at 146a. Furthermore, Dr. Artz, Claimant's treating physician, in response to a question as to whether Claimant was on any medications around the time of his applying for the clerk position testified as follows:

> [a]t the time, I believe he was relying on Ultram (phonetic) which is considered non narcotic but can be a sedating analgesic. It may interfere with his judgment and his ability to perform work duties as well. That would be another reason it [i.e., work] might by inappropriate.

R.R. at 246a. Thus, there is ample evidence of record to find that this issue was not waived. Although preserved, this issue does not afford Claimant relief.

Claimant argues that Employer "failed to establish job availability because Employer did not present any evidence that Claimant would meet PDDC's [the prospective employer] requirement of being free of mood altering substances or that Claimant would be hired in spite of drug use.... It is impossible to determine from the record what PDDC [the prospective employer] would consider a disqualifying 'mood altering substance' since Employer never presented any evidence on this issue." Claimant's brief at 12. Although it may be accurate to say the Employer did not present such evidence, it is inaccurate to state that it is impossible to make a determination on this issue based upon the record. In fact, the record reflects that Ms. Lukas herself explained that the prospective employer was screening only for illegal drugs and not for prescription drugs. Upon cross-examination by Claimant's attorney, the following exchange took place:

> Q[uestion by Claimant's attorney]. The only thing he [Claimant] expressed concern to you about was the criminal records check?
>
> A[nswer by Ms. Lukas]. He may have expressed a concern about his prescription drugs.
>
> Q. In regard to the drug test?
>
> A. Right. I mean that's a given. That's not going to come up as an illegal substance that he's abusing.
>
> Q. Did you explain that to him?
>
> A. Yes. What they're looking for is, you know, illegal substances.

R.R. at 146a. Thus, there was evidence of record to indicate that merely because Claimant was using prescription drugs, such did not bar him from being considered for the job. Accordingly, Employer met its burden of proving that the job was available to Claimant.[1]

---

1. Claimant also argues that Employer had the burden of proving that drug testing was reasonable as part of it burden to prove the availability of the job, citing *Rebel v. Unemployment Compensation Board of Review,* 692

A.2d 304 (Pa.Cmwlth.1997), *aff'd,* 555 Pa. 114, 723 A.2d 156 (1998) in support of the proposition. In *Rebel,* this court observed that random searches by private employers "do not involve state or federal constitutional

The next issue which Claimant raises is: did the WCJ err as a matter of law in finding that Claimant failed to act in good faith where it is undisputed that he was willing to sign the form after obtaining advice of counsel. Claimant bears the burden of proving good faith in following up on job referrals. *Kachinski.* Claimant argues that merely because "Claimant waited for counsel's advice does not establish lack of good faith.... [a] hiatus of three weeks is not an unreasonable period for a person to await legal advice...." Claimant's brief at 16. What is reasonable depends upon the facts and circumstances of each case. *King v. Workmen's Compensation Appeal Board (K–Mart Corp.),* 549 Pa. 75, 84, 700 A.2d 431, 436 (1997)(Cappy, J., concurring)("what constitutes a 'reasonable' period of time will differ with the facts and circumstances of each case....") Employer notes that after interviewing Claimant and being apprised of Claimant's desire to consult counsel before signing the release, the prospective employer agreed to hold open the job for five days and not interview anyone else. Ms. Lukas faxed the document to Claimant's attorney on September 20, 1995. F.F. No. 11. Ms. Lukas called Claimant's counsel to follow up on September 21, 25 and 27. F.F. No. 12. Follow up correspondence was also sent by Ms. Lukas to Claimant's attorney on September 22. *Id.* It was not until October 13, 1995 when Claimant's attorney responded to Ms. Lukas' multiple communications. *Id.* Under the facts and circumstances of this case, we conclude that Claimant's waiting for three weeks for a response from his counsel was unreasonable in light of the 5–day period which the prospective employer had

given Claimant. Given the facts and circumstances of this case, we find the WCJ did not err in concluding that Claimant failed to establish his good faith.

Claimant also argues that before the WCJ could conclude that Claimant failed to follow up on the job in good faith, Employer had to establish that the job was filled and Employer failed to do so. Assuming arguendo, that Employer had such a burden, that burden was carried by Claimant's own testimony that his counsel informed him that the job was filled. R.R. at 209a Claimant testified that "I was called and he [Claimant's attorney] said it was too late because the job is not there anyway. It's too late to sign it because the job is not there." Even if this statement constitutes hearsay, as a party admission, it constitutes substantial evidence to establish that the job was filled. *Senecal v. Workmen's Compensation Appeal Board (Walsh Assoc.),* 57 Pa.Cmwlth. 180, 425 A.2d 1200, 1203 n.4 (1981)(a statement which falls within the party admission exception to hearsay may be used as substantial evidence).

Because none of Claimant's issues afford Claimant relief, the order of the Board is affirmed.

### *O R D E R*

NOW, May 27, 1999, the order of the Workers' Compensation Appeal Board docketed at A97–1034 and dated August 10, 1998 is hereby affirmed.

---

concerns but rather involve a balancing of the employee's obligations to the employer with the employee's common law personal and property rights." *Id.* at 306. We made this observation in the course of determining whether the fired worker therein who refused to comply with the employer's drug testing program was justified in doing so and therefore deserved unemployment compensation benefits. We do not find it appropriate to

import from unemployment compensation law, the analysis intended to determine whether a fired claimant had good cause in declining to comply with an employer's drug policy so as to merit unemployment compensation benefits into worker's compensation law for the purposes of determining whether a job is available or not. Claimant offers no compelling reason for this court to do so nor does he cite any precedent requiring it.